UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
(HOUSTON DIVISION)

_____

|  |  |  |
|---|---|---|
| NIKE USA, INC., | : | |
| | : | |
| Plaintiff, | : | Civ. No. |
| v. | : | |
| | : | |
| FINISH STRONG SPORTS, LLC; | : | |
| RAYMOND COOPER; and | : | |
| DONNA COOK; | : | |
| | : | |
| Defendants. | : | |

_____ :

**COMPLAINT OF NIKE USA, INC. AGAINST FINISH STRONG SPORTS, LLC,
RAYMOND COOPER, AND DONNA COOK**

Nike USA, Inc. ("Nike") hereby files this complaint against Finish Strong Sports, LLC;

Raymond Cooper; and Donna Cook (collectively, the "Defendants") and states as follows:

**The Parties**

1.      Plaintiff, Nike, is an Oregon corporation whose principal business activity is the

design, development, and worldwide marketing and selling of athletic footwear, apparel,

equipment, accessories, and services. Nike is organized in, domiciled in, and a citizen of

Beaverton, Oregon.

2.      Finish Strong Sports, LLC ("FSS") is a Texas limited liability company with an

address registered with the Texas Secretary of State of P.O. Box 7974, Houston, Texas 77270.

FSS has a principal executive office at 3800 Tanglewilde, Suite 608, Houston, Texas 77063.  FSS

is organized in, domiciled in, and a citizen of Houston, Texas.

3.      Raymond Cooper is a member and registered agent of FSS.  Raymond Cooper is

domiciled in and a citizen of Houston, Texas residing at 3800 Tanglewilde, Suite 608, Houston,

Texas 77063.

4.      Donna Cook is a member of FSS.  Donna Cook is domiciled in and a citizen of Houston, Texas residing at 5527 Jessamine, Houston, Texas 77081.

5.      Raymond Cooper is the managing member of FSS.

## Jurisdiction and Venue

6.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because Nike is a citizen of a different state than all of the Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7.      Venue in this District is proper pursuant to 28 U.S.C. §1391.

## Background Facts

**A.  The Account Agreements**

8.      From 2003 through 2020, Nike sold sporting goods, shoes, and apparel to FSS.

9.      Nike and FSS are parties to the Nike Account Application and Agreement dated January 13, 2003 (the "2003 Account Agreement").  A copy of the 2003 Account Agreement is attached hereto as **Exhibit 1** and is incorporated herein by reference.

10.     Nike and FSS are also parties to the Nike Account Application and Agreement dated November 2, 2005 (the "2005 Account Agreement").  A copy of the 2005 Account Agreement is attached hereto as **Exhibit 2** and is incorporated herein by reference.

11.     Nike and FSS are also parties to the Nike USA Account Agreement dated February 20, 2014 (the "2014 Account Agreement," with the 2003 Account Agreement, and the 2005 Account Agreement, the "Account Agreements").  A copy of the 2014 Account Agreement is attached hereto as **Exhibit 3** and is incorporated herein by reference.

12.     The Account Agreements contain substantially similar material terms and provisions.

13.     The Account Agreements are supported by consideration.  In exchange for FSS's execution of the Account Agreements, *inter alia,* Nike agreed to permit FSS to sell Nike products in authorized retail locations in accordance with the terms and conditions of the Account Agreements.

14.     The Account Agreements do not permit FSS to sell Nike products on the internet, through third party sellers, or through third-party distributors or retailers.

15.     The 2014 Account Agreement defines NIKE as NIKE USA, Inc.

16.     The 2014 Account Agreement defines Product as "certain goods bearing NIKE Trademarks."

17.     FSS is the Customer referenced in the 2014 Account Agreement.

18.     Paragraph 7 of the 2014 Account Agreement specifically states that:

> CUSTOMER IS NOT AUTHORIZED TO SELL PRODUCT AT ANY RETAIL OUTLET OR (IN THE CASE OF APPROVED INTERNET SALES) ON WEBSITE OTHER THAN THAT OR THOSE IDENTIFIED IN AN APPROVED APPLICATION.
>
> CUSTOMER MUST SUBMIT A SEPARATE APPLICATION FOR EACH ADDITIONAL STORE, WEBSITE AND/OR TEAM, AND EACH SUCH APPLICATION MUST BE APPROVED BY NIKE IN WRITING BEFORE IT BECOMES EFFECTIVE AND WILL BE SUBJECT TO THE TERMS AND CONDITIONS.

19.     In 2020, Nike approved only one FSS location for the sale of Nike products at 6426 Washington Avenue in Houston, Texas.

20.     In 2020, Nike had not approved any website for the sale of Nike products.

21.     The 2014 Account Agreement includes Terms and Conditions of Sale ("Terms and Conditions") which are incorporated into the 2014 Account Agreement and apply to every purchase order submitted by FSS.

22.     Paragraph 3 of the Terms and Conditions requires FSS to pay Nike for all goods sold when due pursuant to Nike's invoice terms, or if none is specified, within 30 days after the date of that invoice.

23.     Paragraph 3 of the Terms and Conditions requires FSS to dispute an invoice from Nike within thirty days after the date the invoice is due.  If FSS does not dispute an invoice within thirty days after the date the invoice is due, then, pursuant to the 2014 Account Agreement, the invoice will be deemed to be an account stated.

24.     Paragraph 6 of the Terms and Conditions states, in part, that FSS will not:

a.     "Sell Product under any store name or at any physical store other than under the store name and at the particular physical store identified" in the account and credit applications submitted by FSS to Nike.

b.     "Sell Product other than to retail customers physically present at such store location who are purchasing for their personal use and not for resale;" or

c.     "Accept orders or sell Product through the Internet, e-mail or any other electronic channel."

25.     Paragraph 7 of the Terms and Conditions provides, in part, that:

a.     FSS will not directly or indirectly sell, consign or otherwise transfer product:

i.     "Outside the United States (and, if a "brick and mortar" store, other than at the approved physical store location or locations to which it shipped);"

ii.     "To another retailer, or to an e-tailer, distributor, or broker;" or

4

iii.   "To another retailer, or to a broker or distributor, or to any other person under circumstances where it knows or should know, based on the circumstances of the transaction, that the Product is intended for resale or will likely by resold."

b.   FSS will not directly or indirectly "purchase any NIKE Product from, or sell or offer to sell Product on behalf of or for the account of, any other third party."

26.   Paragraph 15 of the Terms and Conditions provides that "Customer will pay all costs, collection agency fees, expenses, reasonable attorney fees (whether incurred prior to, at trial or on appeal) incurred by Nike in connection with the collection of any past due sums."

27.   Paragraph 3 of the Terms and Conditions provides that, "[a]ny sum not paid when due is subject to a service charge of 1.5% per month or the maximum rate permitted by law, whichever is lower."

28.   Paragraph 15 of the Terms and Conditions provides that:

The Agreement, and all disputes arising out of the Agreement or out of the relationship between NIKE and Customer, will be governed by the laws of the State of Oregon . . . Customer irrevocably consents to the jurisdiction of the state and federal courts located in the State of Oregon in connection with any action arising out of or in connection with the Agreement and waives any objection that such venue is an inconvenient forum.  Customer will not initiate an action against Nike in any other jurisdiction.  Nike may bring an action in any forum.

29.   Paragraph 19 of the Terms and Conditions provides that, "nothing in these Terms and Conditions shall be construed to imply that Customer is required to place Orders or that Nike is required to accept Orders."

30.   Paragraph 1 of the Terms and Conditions states that, "NIKE may at any time refuse to ship Product for any reason…NIKE will in its sole discretion determine which of NIKE's

products are made available to Customer for Orders, and determine how to allocate Product among Customer and NIKE's other customers.

31.     Paragraph 19 of the Terms and Conditions provides that, "Upon termination of the parties' relationship, the terms, conditions, and representations herein shall remain in full force and effect with respect to all Orders accepted by Nike prior to the date of termination."

32.     Nike has no account agreements with Raymond Cooper or Donna Cook.

33.     Nike has never approved the sale of its products by Raymond Cooper or Donna Cook.

**B.      The Personal Guaranties**

34.     On January 13, 2003, Donna Cook provided Nike USA, Inc., its successors and assigns with the Nike Personal Guaranty (the "Cook Personal Guaranty").  The Cook Personal Guaranty is attached hereto as **Exhibit 4** and is incorporated herein by reference.

35.     Upon information and belief, on or about February 20, 2014, Raymond Cooper provided Nike USA, Inc. and/or any of its affiliates with the Nike Personal Guaranty (the "Cooper Personal Guaranty," with the Cook Personal Guaranty, the "Personal Guaranties").  The Cooper Personal Guaranty is attached hereto as **Exhibit 5** and is incorporated herein by reference.  Donna Cook and Raymond Cooper are referred to collectively herein as the Guarantors.

36.     The Personal Guaranties were signed by the Guarantors to induce Nike to extend credit to FSS.

37.     Nike extended credit to FSS after Guarantors provided the Personal Guaranties.

38.     In exchange for Guarantors' execution of the Personal Guaranties, Nike agreed to do business with FSS in accordance with the terms and conditions of the Account Agreements and agreed to extend credit to FSS.

6

39.     In the Personal Guaranties, the Guarantors acknowledge that Nike will rely on the Personal Guaranties in doing business with and extending credit to FSS.

40.     Nike relied on, *inter alia*, the Personal Guaranties during the course of at least 17 years in making decisions to extend credit and actually extending credit to FSS.

41.     In the Personal Guaranties, the Guarantors unconditionally, absolutely and irrevocably guarantee and promise to pay to Nike when due all indebtedness owing from FSS to Nike and to perform all of FSS's other obligations to Nike.

42.     The Personal Guaranties define "indebtedness" as used in its most comprehensive sense and includes all debts, obligations and liabilities of FSS to Nike of every nature, whether now in existence or arising at any time in the future, including principal, interest, charges, attorney fees, and costs.

43.     The Personal Guaranties provide that Guarantors' obligations to Nike are direct, primary, independent and unconditional.

44.     In the Personal Guaranties, the Guarantors agree to indemnify Nike and hold Nike harmless from all obligations, demands, claims, and liabilities asserted by any other party, and against all losses incurred or paid by Nike in any way arising out of or in connection with Nike's transactions with FSS.

45.     The Personal Guaranties remain in effect until the Guarantors provide Nike written notice by certified mail of Guarantors' termination of the Personal Guaranties.

46.     The Personal Guaranties provide that the laws of Oregon (without reference to its choice of law provisions) will apply to any suit against the Guarantors.

47.     The Personal Guarantors each executed the Personal Guaranties in their personal capacities and on behalf each of their community property, if any.

7

48.    Donna Cook personally guaranteed payment to Nike of the debts of FSS.

49.    Raymond Cooper personally guaranteed payment to Nike of the debts of FSS

50.    Donna Cook has not terminated the Cook Personal Guaranty.

51.    Raymond Cooper has not terminated the Cooper Personal Guaranty.

**C.      Nike's Allocation of Product**

52.    Nike allocates high-demand product to its retailers based on market conditions and demand.

53.    Nike monitors supply and demand of its new and most demanded product so that each market is properly supplied with sufficient product to reasonably meet customer expectations.

54.    To maintain a balance of supply and demand, Nike relies on its retail customers to supply products to consumers based on approved locations and methods of sale.

55.    If Nike's retailers order quantities in excess of what Nike's retailers can sell to consumers, or sell Nike products through unapproved channels, it is to the detriment of other Nike retailers and consumers in other stores and other markets.

**D.      The Defendants' Unauthorized Sale through Unapproved Channels**

56.    In 2019, Nike learned that FSS sold Nike products through unapproved retail channels.

57.    FSS sold, through an unauthorized third-party internet retailer, products that FSS had obtained from Nike through the Account Agreements and during Nike's reliance on the Personal Guaranties.

58.    The third-party internet retailer was not authorized by Nike to sell Nike products, had no business relationship with Nike, and was not a Nike customer.

59.     The product Nike sold to FSS was intended solely for sale by FSS to customers at FSS's retail brick-and-mortar location approved by Nike.

60.     FSS's sale of the Nike product through unauthorized retail channels is unauthorized transshipping.

61.     As a consequence of FSS's unauthorized transshipping, Nike declined to sell further product to FSS.

## I.      COUNT I – ACCOUNT STATED

### Nike USA, Inc. v. Finish Strong Sports, LLC

62.     Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

63.     Nike issued invoices to FSS for goods and services Nike provided to FSS and has made a demand for payment.  Such invoices were due and payable to Nike more than thirty days prior to the filing of this Complaint.

64.     Nike and FSS have worked to resolve invoice discrepancies, including, but not limited to, chargebacks, freight, and quantity issues.  After resolving such issues, the amounts set forth in this Complaint remain due and payable to Nike by FSS.

65.     As of the date of the filing of this Complaint, FSS is indebted to Nike in an amount no less than $333,477.14, exclusive of interest, fees and costs.  A copy of the Account Statement showing the amount FSS owes to Nike is attached hereto as **Exhibit 6** and is incorporated herein by reference.

66.     Despite Nike's demand, the foregoing amount has not been paid to Nike as of the filing of this Complaint.

67.     The foregoing amount continues to accrue interest at a rate of 1.5% per month or the maximum rate permitted by law, whichever is lower.

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against FSS in an amount no less than $333,477.14, plus all of Nike's costs, collection agency fees, interest, expenses, and reasonable attorney fees (whether incurred prior to, at trial or on appeal) incurred by Nike in connection with Nike's collection efforts.

## II.     COUNT II – BREACH OF CONTRACT

### Nike USA, Inc. v. Finish Strong Sports, LLC

68.     Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

69.     FSS and Nike are parties to the Account Agreements that require FSS to pay Nike for goods and services provided to FSS.

70.     Nike provided goods and services to FSS, which was Nike's substantial performance pursuant to the Account Agreements.

71.     Nike has invoiced FSS for the amounts set forth in Count I of this Complaint.

72.     Nike has made a demand to FSS for the amounts set forth in Count I of this Complaint.

73.     Nike has resolved all discrepancies and issues raised by FSS with respect to each invoice issued to FSS by Nike.

74.     Nonetheless, despite Nike's demand, FSS has failed to pay Nike for the goods and services Nike has provided to FSS.

75.     FSS's failure to pay Nike is a breach of the Account Agreement.

76.     FSS's breach of the Account Agreement has caused Nike to suffer damages in an amount no less than $333,477.14.

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against FSS in an amount no less than $333,477.14, plus all of Nike's costs, collection agency fees, interest, expenses, and reasonable attorney fees (whether incurred prior to, at trial or on appeal) incurred by Nike in connection with Nike's collection efforts.

### III.     COUNT III – BREACH OF CONTRACT

Nike USA, Inc. v. Finish Strong Sports, LLC

77.     Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

78.     The Account Agreements forbid FSS from selling Nike goods through unapproved channels and unauthorized third-party internet retailers.

79.     FSS sold Nike products through an unapproved channel and an unauthorized third-party internet retailer.

80.     FSS purchased goods from Nike and sold or transferred such goods to or through an unapproved channel and an unauthorized third-party internet retailer not in privity of contract with Nike.

81.     The practice of FSS obtaining goods from Nike and then selling those goods through entities not in privity of contract with Nike is referred to as "transshipping."

82.     Transshipping violates the Account Agreements.

83.     FSS has breached the Account Agreements by transshipping and selling Nike products online through unauthorized third-party internet retailers.

84.     FSS's transshipping has damaged Nike.

WHEREFORE, Nike requests that judgment be entered against FSS in an amount no less than $333,477.14 plus all of Nike's costs, collection agency fees, expenses, interest, attorney fees and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

### IX.    COUNT IX – BREACH OF PERSONAL GUARANTIES

Nike USA, Inc. v. Donna Cook and Raymond Cooper

85.    Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

86.    In the Personal Guaranties, the Guarantors personally guaranteed payment of the debts of FSS to Nike in exchange for FSS's continued ability to conduct business with Nike and in exchange for Nike's extension of credit to FSS.

87.    Nike provided goods and services to FSS, and extended credit to FSS for seventeen years, which was Nike's substantial performance pursuant to the Personal Guaranties.

88.    Because of the Personal Guaranties, the Guarantors are personally obligated to Nike in an amount not less than $333,477.14 plus costs, collection agency fees, expenses, interest, attorney fees and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

89.    Nike has demanded payment from the Guarantors, but the Guarantors have failed to pay Nike.

WHEREFORE, Nike requests that judgment be entered against the Guarantors in an amount no less than $333,477.14 plus all of Nike's costs, collection agency fees, expenses, interest, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

## X.      COUNT X – INDEMNIFICATION

Nike USA, Inc. v. Donna Cook and Raymond Cooper

90.     Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

91.     The Personal Guaranties require the Guarantors to indemnify and hold Nike harmless from all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in any way arising out of or in connection with Nike's transactions with FSS.

92.     The Guarantors are required to indemnify Nike for all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in connection with the Complaint and with Nike's transactions with FSS.

93.     Despite Nike's demand for payment from the Guarantors, the Guarantors have failed to indemnify Nike.

WHEREFORE, Nike requests that judgment be entered against the Guarantors in an amount no less than $333,477.14, in addition to all losses incurred or paid by Nike in connection with the Complaint, and all of Nike's costs, collection agency fees, expenses, interest, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

## XI.      COUNT XI - UNJUST ENRICHMENT

## PLED IN THE ALTERNATIVE TO COUNT II

Nike USA, Inc. v. Finish Strong Sports, LLC

94.     Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

95.     At the request of FSS, Nike conferred a benefit upon FSS by providing the goods and services described herein and in the exhibits attached hereto.

96.     FSS received and accepted the benefit of said goods and services provided by Nike.

97.     At all times material hereto, FSS was aware that Nike was providing the aforesaid goods and services to FSS and that Nike expected to be paid for such.

98.     At all times material hereto, FSS, with the aforesaid knowledge, permitted Nike to provide said goods and services and to incur damages.

99.     At all times material hereto, FSS was unjustly enriched by retaining the benefit of receiving said goods and services without paying Nike fair and reasonable compensation.

100.    FSS failed to pay Nike despite Nike's demand.

101.    Allowing FSS to retain the benefit of said goods and services without paying fair compensation would be unjust.

102.    By reason of the aforesaid unjust enrichment of FSS at Nike's expense, an implied contract exists between Nike and FSS, and FSS is obligated to pay Nike the *quantum meruit* value of the goods and services described herein and in the exhibits attached hereto in the amount of $333,477.14.

WHEREFORE, Nike requests that judgment be entered against FSS in an amount no less than $333,477.14, in addition to all losses incurred or paid by Nike in connection with the Complaint, and all of Nike's costs, collection agency fees, expenses, interest, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

Dated: February 24, 2022

Respectfully submitted,

/s/ *Melissa S. Hayward*

Melissa S. Hayward
  State Bar No. 24044908
  SDTX Bar No. 609021
  MHayward@HaywardFirm.com
**HAYWARD PLLC**
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231
(972) 755-7100 (tel./fax)

-and-

Anthony M. Saccullo
Mary E. Augustine
A.M. Saccullo Legal, LLC
27 Crimson King Drive
Bear, DE 19701
Phone: (302) 836-8877
Fax: (302) 836-8787
ams@saccullolegal.com
meg@saccullolegal.com

*Attorneys for Nike USA, Inc.*